1  PAUL L. REIN, Esq. (SBN 43053)
   JULIE OSTIL, Esq. (SBN 215202)
2  ANN WINTERMAN, Esq. (SBN 222257)
   LAW OFFICES OF PAUL L. REIN
3  200 Lakeside Dr., Suite A
   Oakland, CA 94612
4  Tel. (510) 832-5001
   Fax. (510 832-4787
5
   Attorney for Plaintiffs:
6  ROBERT CRUZ AND DARWIN DIAS

7
   DENNIS J. HERRERA, State Bar #139669
8  City Attorney
   DANNY CHOU, State Bar #180240
9  Chief of Complex and Special Litigation
   JAMES M. EMERY, State Bar #153630
10 Chief of Complex Litigation
   ERIN BERNSTEIN, State Bar #231539
11 Deputy City Attorney
   1390 Market Street, 7th Floor
12 San Francisco, California 94102-5408
   Telephone:    (415) 554-4218
13 Facsimile:    (415) 554-3985

14
   Attorneys for Defendant:
15 CITY AND COUNTY OF SAN FRANCISCO

16                    UNITED STATES DISTRICT COURT
17                   NORTHERN DISTRICT OF CALIFORNIA

18 ROBERT CRUZ AND DARWIN          CASE NO. C08-00244 MEJ
   DIAS,                           Civil Rights
19
          Plaintiffs,
20                                 **JOINT CASE MANAGEMENT
   v.                              STATEMENT**
21
                                   Date:  April 24, 2008
22 CITY AND COUNTY OF SAN          Time: 10:00 a.m.
   FRANCISCO, DOES 1-10, Inclusive, Place: U.S. District Court
23                                      450 Golden Gate Ave.
          Defendants.                   Courtroom B, 15th Floor
24 _____/     San Francisco, CA
                                   Judge: Hon. Maria-Elena James
25

26         Pursuant to this Court's Civil Local Rule 16-9, the parties jointly submit this
27 Case Management Statement.  Each party certifies that its lead trial counsel who will try this
28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Joint Case Management Statement:
Case No. C05-2985 MEJ**

— 1 —
s:\slr\hallidie plaza\pleadings\cruzcmc2.doc

1    case met and conferred for the preparation of this Statement as required by Civ. L.R. 16-3.

2    **I.        DESCRIPTION OF THE CASE:**

3        **1.        A brief description of events underlying the action.**  The following are the

4    positions of the parties:

5        **a.        Plaintiffs' Position:**

6        Plaintiffs Robert Cruz and Darwin Dias are each a physically disabled person who

7    requires the use of a wheelchair.  Plaintiffs Robert Cruz and Darwin Dias were stranded on a

8    cold and windy evening for several hours at Hallidie Plaza, a public facility owned and

9    operated by defendants City and County of San Francisco located adjacent to Powell and

10   Market Streets in San Francisco, California, because the City adopted and carried out a policy

11   of regularly stopping elevator access for disabled persons to Hallidie Plaza at a time when its

12   facilities were open for use by non-disabled persons.

13       On Saturday, May 26, 2007, at approximately 2:45 p.m., plaintiffs Robert Cruz and

14   Darwin Dias took the elevator down from Market Street to the Hallidie Plaza, one level down

15   from the street level, in order to meet friends for coffee and snacks at the Cable Car Coffee

16   restaurant located on the Hallidie Plaza.  This elevator is owned and operated by defendants,

17   and each of them.  When plaintiffs arrived at the Hallidie Plaza, they met several non-disabled

18   friends at the Cable Car Coffee restaurant, and sat in their wheelchairs at an outdoor table.

19   Shortly before 4 p.m. they parted with their friends, who left by walking down several steps to

20   BART.  When plaintiffs wheeled over to the elevator to leave, they discovered that the elevator

21   had been shut off and an orange cone had been placed in front of the elevator door.  They saw

22   for the first time a sign above the elevator, posted by defendants, stating that the elevator was

23   kept open and operable only from 9 a.m. to 5 p.m., Monday-Friday, and 9 a.m. to 3 p.m. on

24   Saturday and Sunday.  Such a policy specifically discriminates against physically disabled

25   persons who use wheelchairs in that said policy effectively bars wheelchair users from using

26   the facilities at Hallidie Plaza, including those of the Cable Car Coffee restaurant, after 3 p.m.

27   on weekends when such facilities are open to the general public and are available to non-

28   disabled persons without subjecting such non-disabled persons to the danger of being trapped at

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Joint Case Management Statement:**
**Case No. C05-2985 MEJ**
                                                          – 2 –

1   Hallidie Plaza or being excluded from Hallidie Plaza.

2       Plaintiffs then discovered that there was no other way to leave Hallidie Plaza when the

3   elevator was closed, except by going down approximately six stairs to the BART station level

4   or up approximately 20 stairs to the street level.  As a result, plaintiffs Robert Cruz and Darwin

5   Dias were trapped and stranded on the Hallidie Plaza level along with their heavy motorized

6   wheelchairs, suffered a violation of their civil rights and were falsely imprisoned.  The Cable

7   Car Coffee restaurant was still open.  Plaintiffs inquired of the Cable Car Coffee staff as to

8   whether there were any restroom facilities on the Hallidie Plaza level, and were told that there

9   were none.  The Cable Car Coffee employees also advised that they did not know of any way to

10  contact someone to have the elevator turned back on.  There were also no signs or

11  communication devices to notify the City of San Francisco or its employees that disabled

12  persons were trapped on the Hallidie Plaza level.

13      Claimant Robert Cruz was in pain from his need to urinate and was concerned that he

14  would suffer a bodily functions accident in his clothing.  He was able to signal two uniformed

15  Muni Metro police officers who came over and suggested that he go to the corner gutter and

16  urinate there, despite his humiliation in having to be required to urinate in a public place.   Both

17  plaintiffs were also in pain and physical discomfort due to the weather turning increasingly cold

18  and windy.

19      Plaintiffs called the San Francisco Muni City Services line and asked for assistance and,

20  when the San Francisco Muni employee stated that he could not provide assistance, plaintiffs

21  asked to speak to a supervisor.  The supervisor claimed that the elevator did not belong to San

22  Francisco Muni, but told plaintiffs to call the San Francisco Department of Public Works;

23  plaintiffs tried to do this but were unable to obtain any assistance.   Plaintiffs were told by the

24  City employee at the City Services direct line that she had contacted the Department of Public

25  Works and was told that their "engineer," who allegedly had the only key for the Hallidie Plaza

26  elevator, had left for the Memorial Day weekend and there was no way to contact him.

27      Meanwhile, after an extended wait, plaintiff Robert Cruz again had a painful need to

28  urinate and, with no restroom facilities available, was again required to use a corner of the

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Joint Case Management Statement:**
**Case No. C05-2985 MEJ**

– 3 –

1  gutter, despite his embarrassment that he might be in full view of members of the public

2  passing by at the upper street level.  Finally, plaintiffs called the San Francisco Police

3  Department, but were then told to call the San Francisco Fire Department to request assistance.

4  Plaintiffs called the Fire Department and explained their situation and told where the Hallidie

5  Plaza was located.   Finally, the San Francisco Fire Department personnel arrived and assisted

6  both plaintiffs down the stairs to the BART/Muni Metro concourse level, and carried their

7  heavy motorized wheelchairs down to this level, so that plaintiffs could finally leave the

8  premises.

9  Defendants' apparent disdain for the rights of disabled wheelchair users to access

10  Hallidie Plaza was emphasized when, shortly after plaintiffs filed and served the complaint in

11  this action, defendants closed the elevator altogether.  While defendants have alleged that the

12  elevator was closed for repairs, it was left out of operation for several months, thus blocking all

13  disabled access to Hallidie Plaza, the Cable Car Coffee restaurant, and the San Francisco

14  Visitors Center.  This also impeded access for disabled persons to the Powell St. BART station

15  served by the same elevator.  The delay in making any repairs shows that access for disabled

16  persons was not a priority for the City of San Francisco.

17  Defendants' failure to provide access in the manner described above was in violation of

18  multiple federal and state laws and regulations, including but not limited to Title II of the

19  Americans With Disabilities Act of 1990, § 504 of the Rehabilitation Act of 1973, California

20  Government Code §§ 4450ff, California Civil Code §§ 54 and 54.1, and Title 24 of, the

21  California Building Code.  As the result of the defendants' failure to carry out its legal

22  obligations, plaintiffs were discriminated against on the basis of their disability, and suffered

23  violation of their federal and state civil rights, suffered physical, mental, and emotional distress

24  and injuries, all to their damages.

25  **b.   Defendant's Position:**

26  Hallidie Plaza is a City-owned space occupying an intermediate level between street-

27  level and the Powell Street BART/Muni station.  While the Plaza may be accessed via stairs or

28  escalator, an elevator provides disabled access from the street level to the Plaza.  A separate

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Joint Case Management Statement:**
**Case No. C05-2985 MEJ**

– 4 –

s:\slr\hallidie plaza\pleadings\cruzcmc2.doc

1   elevator provides service to the BART/MUNI station from Market Street.

2       Posted on the elevator used to access Hallidie Plaza are signs indicating its hours of

3   operation, which coincide with the hours of operation of the privately owned San Francisco

4   Visitor Center located in Hallidie Plaza.  The posted signs indicate that the elevator is operable

5   only from 9 a.m. to 5 p.m., Monday-Friday, and 9 a.m. to 3 p.m. on Saturday and Sunday; the

6   elevator must be activated and de-activated daily by employees of the San Francisco Department

7   of Public Works to avoid vandalism, misuse, and risk of harm to the public.

8       On information and belief, on May 26, 2007, a Saturday, disabled plaintiffs Robert Cruz

9   and Darwin Dias took the elevator down from Market Street to Hallidie Plaza at approximately

10   2:45 p.m.  Plaintiffs did not check the elevator's hours of operation before using the elevators to

11   proceed to the Plaza level.  After proceeding to the Plaza level, Plaintiffs remained there until

12   approximately 4:00 p.m.  The elevator had closed at 3:00 p.m., as noted by the clearly posted

13   sign.

14       Unfortunately, as Plaintiffs had stayed in the Plaza until nearly an hour after the elevator's

15   posted closing time, they were unable to use that method of exiting the Plaza.  Plaintiffs did not

16   immediately dial 911 upon discovering that they were unable to leave the Plaza, but rather

17   delayed calling the Fire or Police Departments, who once called promptly assisted Plaintiffs out

18   of the Plaza.  When requested to assist Plaintiffs in leaving the Plaza, the San Francisco Fire

19   Department sent several employees to aid Plaintiffs in leaving the Plaza.

20       Although Plaintiffs append to their portion of this Statement complaints about the current

21   status of the Hallidie Plaza elevator, such contentions are not present in their Complaint in this

22   action, nor are they pertinent to this suit.  The City has repeatedly assured Plaintiffs that the

23   closure of the elevator was not due to any retaliation against Plaintiffs, but rather due to

24   mechanical problems.

25       The elevator at Hallidie Plaza is currently in full operating service.  The previous out-of-

26   order status of the elevator was due to severe structural damage caused during a Fire Department

27   rescue at that site.  The rescue required that the Fire Department take actions that damaged the

28   top floor hoist way door jamb and top floor door lock assembly of the elevator.  The elevator was

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Joint Case Management Statement:**
**Case No. C05-2985 MEJ**

s:\slr\hallidie plaza\pleadings\cruzcmc2.doc

1    promptly evaluated for repairs, which unfortunately required that several parts be fabricated

2    before the repair company could re-open the elevator.  The City worked with the company

3    responsible for the elevator's maintenance and repair to re-open the elevator as soon as possible,

4    after assuring that the parts were fabricated to specifications, and that the elevator was

5    satisfactorily  repaired and safe for public use.

6        **2.        The principal factual issues that the parties dispute:**

7        **a.        Plaintiffs' Factual Issues:**

8            1) Did defendants carry out new construction or "alterations, structural

9    repairs, and additions" at the subject premises after 1968, mandating full

10   compliance with Gov. Code § 4455 and related California Building Codes

11   including, ANSI, Title 24-2 regulations and federal ADAAG standards?

12           2)  Were the subject facilities, programs and activities cited in plaintiffs'

13   Complaint and other relevant facilities serving Hallidie Plaza inaccessible to

14   plaintiffs and other disabled wheelchair users on May 26, 2007, when plaintiffs

15   visited the premises?

16           3) Did defendants prepare an "ADA Transition Plan" for the removal of

17   barriers and the modification of policies and practices to ensure that all of their

18   programs, services and activities were accessible on a "full and equal" basis to

19   disabled persons?

20           4) Did defendants remove architectural barriers identified and modify

21   policies and programs to provide access as set forth in their "ADA Transition

22   Plan?"

23           5)  Have defendants received federal funding subjecting them to

24   additional liability under section 504 of the Rehabilitation Act?

25           6) What access improvements/modifications have defendants already

26   made in response to plaintiffs' lawsuit?

27           7) What damages did plaintiffs incur as the result of lack of access at

28   Hallidie Plaza, under both state law standards (Civil Code §54.3), under Section

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Joint Case Management Statement:**
**Case No. C05-2985 MEJ**
– 6 –
s:\slr\hallidie plaza\pleadings\cruzcmc2.doc

1  504 of the Rehabilitation Act of 1973, and pursuant to Title II of the ADA, from

2  the date of their visit of May 26, 2007, and every subsequent time plaintiffs have

3  been deterred from returning to the relevant facilities, or obtaining the programs,

4  services, and activities offered by defendants due to the lack of accessible

5  facilities?

6        8)  Are treble damages appropriate because of defendants' intentional

7  violation of rights of disabled persons?

8        9)  Did the City of San Francisco retaliate against the disabled plaintiffs

9  by closing the subject elevator after being served with plaintiff's complaint, and

10  by keeping the elevator closed for several months during repairs, rather than

11  making this repair a high priority because defendants knew that disabled persons

12  were totally blocked during this closure from any access to the Cable Car Coffee

13  restaurant and the San Francisco Visitors Center (both located on Hallidie

14  Plaza)?

15   **b.  Defendant's Factual Issues:**

16        1)  Were the subject facilities, programs and activities cited in plaintiffs'

17  Complaint and other relevant facilities serving Hallidie Plaza inaccessible to

18  plaintiffs and other disabled wheelchair users on May 26, 2007, when plaintiffs

19  visited the premises?

20        2)  Is Hallidie Plaza itself a facility, program, or activity offered by

21  Defendants?

22        3)  Did the City provide reasonable access to the facilities, programs, or

23  activities offered in Hallidie Plaza?

24        4) Did the City taking appropriate measures to repair the elevator at

25  Hallidie Plaza, which was severely damaged during a Fire Department rescue

26  unrelated to Plaintiffs' experiences at the Plaza?

27   **3.     The principal legal issues that the parties dispute:**

28   **a.     Plaintiffs' Legal Issues:**

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Joint Case Management Statement:**
**Case No. C05-2985 MEJ**

s:\slr\hallidie plaza\pleadings\cruzcmc2.doc

1        1)        What access changes and reasonable modifications in policy are

2    required under the Americans with Disabilities Act of 1990 and the

3    corresponding regulations entitled Americans with Disabilities Act Access

4    Guidelines (ADAAG)?

5        2)        What access changes and monetary damages are required for

6    violations of Civil Code §§ 54, 54.1 and 54.3?

7        3)        What damages are also required under California law for access

8    violations under ADA standards, as incorporated by reference into California

9    Civil Code §§ 54(c) and 54.1(d)?

10    4)        Do Building Departments enforce the ADA, or is it enforced only by the

11    U.S. Department of Justice and private lawsuits?

12    5)        What barrier removal and monetary damages are required for violations

13    of Section 54.3 of the Civil Code, Section 504 of the Rehabilitation Act of 1973,

14    and Title II of the ADA?

15    6)        Are treble damages appropriate under Civil Code § 54.3?

16    **b.        Defendant's Legal Issues:**

17        1)        What access changes and reasonable modifications in policy are

18    required under the Americans with Disabilities Act of 1990 and the

19    corresponding regulations?

20        2)        Is Hallidie Plaza itself a facility, program, or activity offered by

21    Defendants?

22        3)        Did the City provide reasonable access to the facilities, programs,

23    or activities offered in Hallidie Plaza?

24        4)        What access changes and reasonable modifications in policy are

25    warranted under the Americans with Disabilities Act of 1990 and corresponding

26    regulations, and/or California Civil Code §§ 54, 54.1?

27        5) What, if any, monetary damages are warranted for the lack of disabled

28    access alleged by Plaintiffs in this case?

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Joint Case Management Statement:**
**Case No. C05-2985 MEJ**

– 8 –

s:\slr\hallidie plaza\pleadings\cruzcmc2.doc

1   **4.       The other factual issues that remain unresolved for the reason stated below**

2   **and how the parties propose to resolve those issues:** None known at this time.

3   **5.       The parties that have not been served and the reasons:** None; however, the

4   parties reserve the right to join, cross-claim, and counterclaim against additional parties when

5   and if their capacities and relative responsibilities are ascertained.

6   **6.       The additional parties which the below-specified parties intend to join and**

7   **the intended time frame for such joinder:** None; however the parties reserve the right to join,

8   cross-claim, and counterclaim against additional parties when and if their capacities and relative

9   responsibilities are ascertained.

10  **II.    ALTERNATIVE DISPUTE RESOLUTION:**

11  **7.       The following parties consent to assignment of this case to a United States**

12  **Magistrate Judge for trial:** All parties have consented to the assignment of this case to a

13  United States Magistrate Judge for trial.

14  **8.       The parties have already been assigned to the following court ADR process:**

15  None.

16  **9.       The ADR process to which the parties jointly request referral:** The parties

17  have represented their intention of cooperating toward an early resolution at a settlement

18  conference before a Magistrate Judge or mediator.   Plaintiffs request assignment to a

19  Magistrate Judge, as settlement is more likely by such assignment.

20      The parties request referral to a Magistrate Judge or mediator for an early settlement

21  conference/mediation to be set within 90 days of the Case Management Conference with a

22  Further Case Management Conference to be scheduled 30 days after the early settlement

23  conference/mediation in the event the parties do not settle the case.

24  **III.   DISCLOSURES:**

25  **10.      The parties certify the following disclosures:** The parties agree to exchange

26  disclosures on or before May 1, 2008.

27  **IV.    DISCOVERY:**

28  **11.      The parties agree to the following discovery plan:**

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Joint Case Management Statement:**
**Case No. C05-2985 MEJ**
– 9 –
s:\slr\hallidie plaza\pleadings\cruzcmc2.doc

1           The parties have discussed scheduling a cooperative site visit of the subject

2   premises.

3           If the parties are unable to cooperate to informally exchange information after this site

4   visit, the parties would then seek formal discovery as limited by the Federal Rules of Civil

5   Procedure and Local Rules.

6   **Joint Position Re: Limitations**

7           If the Court selects the suggested trial date at the "end of June 2009," the parties

8   suggest the following limitations and deadlines.

9       **<u>Limitations</u>:**

10  i.     <u>Depositions</u>: As per Federal Rules of Civil Procedure.

11  ii.    <u>Interrogatories</u>:  The parties agree to proceed as per the Federal Rules of Civil

12       Procedure.

13  iii.   <u>Experts</u>. As per the Federal Rules of Civil Procedure.

14  iv.   <u>Supplemental disclosures</u>: As per the Federal Rules of Civil Procedure.

15  v.    <u>Initial Disclosures From Any Newly Added Parties</u>: Within 45 days of the new party's

16       initial appearance.

17      **<u>Deadlines</u>:**  If a trial date is set at the end of May, 2009:

18          Deadline to disclose experts and expert reports ........................... October, 2008

19          Deadline to complete all discovery including experts ................December, 2008

20          Last filing date for dispositive motions .....................................December, 2008

21          Final pretrial conference ................................................................April, 2009

22      **12.**    **The parties request a trial date as follows:** End of May, 2009.

23      **13.**    **The parties expect that the trial will last for the following number of days:**

24  Estimate without the benefit of discovery and identification of issues through pre-trial

25  statement: 4-6 trial days.

26  **V.**    **<u>IDENTIFICATION AND SIGNATURE OF LEAD TRIAL COUNSEL</u>:**

27      **a.**    **For Plaintiffs ROBERT CRUZ AND DARWIN DIAS:**

28      PAUL L. REIN, Esq.

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Joint Case Management Statement:**
**Case No. C05-2985 MEJ**

– 10 –

s:\slr\hallidie plaza\pleadings\cruzcmc2.doc

1    JULIE OSTIL, Esq.
     ANN WINTERMAN, Esq.
2    LAW OFFICES OF PAUL L. REIN
     200 Lakeside Drive, Suite A
3    Oakland, California 94612
     Tel: (510) 832-5001
4    Fax: (510) 832-4787

5        b.    **For Defendant CITY and COUNTY OF SAN FRANCISCO:**

6    DENNIS J. HERRERA, State Bar #139669
     City Attorney
7    DANNY CHOU, State Bar #180240
     Chief of Complex and Special Litigation
8    JAMES M. EMERY, State Bar #153630
     Chief of Complex Litigation
9    ERIN BERNSTEIN, State Bar #231539
     Deputy City Attorney
10   1390 Market Street, 7th Floor
     San Francisco, California 94102-5408
11   Telephone:    (415) 554-4218
     Facsimile:    (415) 554-3985

12

13   Dated: April 17, 2008              PAUL L. REIN
                                        JULIE OSTIL
14                                      ANN WINTERMAN
                                        LAW OFFICES OF PAUL L. REIN

15

16                                      _____/s/ Paul L. Rein_____
                                        Attorneys for Plaintiffs
17                                       ROBERT CRUZ AND DARWIN DIAS

18

19   Dated: April 17, 2008              ERIN BERNSTEIN

20

21                                      _____/s/ Erin Bernstein_____
                                        Attorneys for Defendant
22                                      CITY AND COUNTY OF SAN FRANCISCO

23

24

25

26

27

28

**Joint Case Management Statement:**
**Case No. C05-2985 MEJ**

s:\slr\hallidie plaza\pleadings\cruzcmc2.doc

1

## **CASE MANAGEMENT ORDER**

2

3            The Case Management Statement and Proposed Order is hereby adopted by the

4     Court as the Case Management Order for the case and the parties are ordered to comply with

5     this Order.

6

7

8            In addition, the Court orders:

9

10

11     Dated:_____

12

13                                              _____
                                               HON. MARIA-ELENA JAMES
14                                             U.S. MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Joint Case Management Statement:**                                          - 12 -
**Case No. C05-2985 MEJ**

s:\slr\hallidie plaza\pleadings\cruzcmc2.doc